Cite as 2022 Ark. App. 224

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-21-530

| | | |
|---|---|---|
| STEVIE LEE YOUNG, JR. | APPELLANT | Opinion Delivered May 11, 2022 |
| V. | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NOS. 66FCR-08-1372; 66FCR-14-947] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE STEPHEN TABOR, JUDGE |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

Appellant Steven Lee Young, Jr., appeals the October 11, 2021 decision of the Sebastian County Circuit Court revoking his suspended imposition of sentence (SIS) for two offenses. On appeal, he argues that the evidence does not support the revocation of his suspended imposition of sentence. We affirm.

Young pleaded guilty to theft by deception (a Class B felony) in March 2009. He was sentenced to two years' imprisonment followed by eight years' SIS. He was also ordered to pay $275 a month toward restitution in the amount of $24,527. The payment was a condition of his SIS. In November 2014, Young pleaded guilty to a new offense, second-degree forgery (a Class C felony). For this, he was sentenced to five years' imprisonment followed by an additional five years' SIS. He was also ordered to pay $60 a month toward

new restitution in the amount of $400. He was ordered to continue paying restitution in his prior case. He was also ordered to pay court costs of $250. Young's imprisonment for the forgery conviction ended on August 27, 2015.

On March 23, 2017, the prosecutor filed a petition to revoke in both cases, alleging that Young had failed to pay toward the restitution ordered in the 2009 case since August 2016, leaving a balance of $24,362. Regarding the 2014 case, he had not paid at all toward the restitution or the costs and fees. The case was continued by agreement with the State to see if Young would make payments. A revocation hearing was held on October 28, 2019.

At the hearing, the State introduced the ledgers showing what payments Young had made and what balances were due toward all the restitution, fines, and fees owed by Young, showing that a balance of $24,376.34 remained on the restitution, fines, and fees in both cases. Young testified. He said that he is a disabled veteran who suffers from schizophrenia. He drew 30 percent Veterans Affairs (VA) disability from 2009 until 2017. During that time, he traveled around working odd jobs and then helping his family. In 2017, he began drawing 100 percent disability for his severe schizophrenia in the amount of about $3300 a month.

When asked why he missed payments even after being awarded full disability, he explained that when he failed to appear in a different revocation case and a bench warrant was issued, he became ineligible to receive VA benefits, causing overpayments. He said that he owed the VA $22,873.29 due to payments improperly received under his fugitive status. To recoup the overpayment, his benefits were "turned off" in July 2020, but he said he was able to get them restored by making a payment arrangement wherein the VA would withhold

2

$329 from each check to pay down the balance. He said he did not receive VA benefits for "about five or six months."

Young explained that he had also defaulted on some outstanding payday loans that also come out of his check. Young testified that he had been in jail for a while but had paid a $1,000 cash bond to get out. He volunteered to pay $1000 a month starting on the first of the next month to "get this thing over with."

The judge found by a preponderance of the evidence that Young had violated the terms and conditions of his SIS.

Despite the fact that Young had failed to appear three times since February 2018, the court had continued the case four times so that Young could make payments, and Young had not made any payments since October 2018, the court postponed sentencing for three months to allow Young one last opportunity to pay. A sentencing hearing was set for January 2020. Young failed to appear. It was October 2021 when a sentencing hearing was held. He had made one payment of $1,000 in October 2019. When asked why, he said he had been having medical problems, and his family was misusing his funds. The court stated that

> [m]y problem in trusting Mr. Young is that he has proven to be untrustworthy. He didn't live up to his obligations to the Court prior to the hearing. He didn't live up to his word after the hearing. He has failed to appear four different times. So, I think it would be beyond naïve of me to trust him at this point.
>
> . . .
>
> Again, I just can't trust [Mr. Young] at this point. I am taking into account, first of all, the amount of restitution, the fact that Mr. Young has on four occasions absented himself from court.

3

Young was sentenced to five years' incarceration followed by thirteen years' SIS for the 2009 charge and five years' incarceration for the 2014 charge, with the sentences to run concurrently. On appeal, Young argues that the State failed to prove that he inexcusably and willfully violated the terms and conditions of his SIS.

The State must prove by a preponderance of the evidence that a defendant inexcusably failed to comply with a condition of his probation. Ark. Code Ann. § 16-93-308(d) (Supp. 2021). A circuit court's decision to revoke probation will be upheld on appeal unless the decision is clearly against the preponderance of the evidence. *Bohannon v. State*, 2014 Ark. App. 434, 439 S.W.3d 735. When the alleged violation involves the failure to pay court-ordered restitution, after the State has introduced evidence of nonpayment, the burden shifts to the defendant to provide a reasonable excuse for his failure to pay. *Id.* It is the defendant's obligation to justify his failure to pay, and this shifting of the burden of production provides an opportunity to explain the reasons for nonpayment. *Id.* If he asserts an inability to pay, then the State must demonstrate that the probationer did not make a good-faith effort to pay. *Williams v. State*, 2019 Ark. App. 437, at 3, 586 S.W.3d 208, 210. Ultimately, the State has the burden of proving that the defendant's failure to pay was inexcusable. *Id.*

Young asserted that he had not made consistent payments because he was unable to do so. He established that he is 100 percent disabled with a severe schizophrenia diagnosis. He said that his medications caused him to have episodes, at one point his disability was cut

off, his ex-wife did not make payment on a debt in his name, and some of his benefits are being withheld. He said that he cannot borrow money.

Arkansas Code Annotated section 5-4-205(f)(3) (Supp. 2021) provides that in determining whether to revoke due to failure to pay, the court must consider the defendant's employment status, earning ability, financial resources, the willfulness of the failure to pay, and any other special circumstances that may have a bearing on the defendant's ability to pay. Ark. Code Ann. § 5-4-205(f)(3)(A)–(E). While the statute governing revocations requires the circuit court's consideration of certain factors in determining whether a party's inability to pay is inexcusable, the statute does not require explicit findings of fact on those factors. *Springs v. State*, 2017 Ark. App. 364, at 5, 525 S.W.3d 490, 493. In *Hanna v. State*, 2009 Ark. App. 809, at 6, 372 S.W.3d 375, 379, we explained that the State can carry its burden of proving willful nonpayment in several ways: (1) by undermining the probationer's credibility; (2) by showing the probationer's lack of effort; (3) by showing that a probationer failed to make a bona fide effort to seek employment or borrow money; or (4) by showing that the probationer is spending money on something nonessential or illegal instead of paying restitution. *See also Williams*, *supra*; *Joseph v. State*, 2019 Ark. App. 276, at 5, 577 S.W.3d 55, 59.

The court twice stated that it did not find Young credible. Young has had an obligation to pay fines, fees, and restitution since 2009. He was not sentenced until 2021. In that entire time, he made seven payments, the most recent one in October 2019. The court and the judicial system gave him every opportunity to make payments, and even excusing the

5

time he was not on full disability or his disability was cut off, there were several stretches of years of nonpayment. Even looking only at the timespan between the 2019 and 2021 hearings, he was receiving roughly $3000 a month in VA disability benefits and yet he made one payment.

Young asserts that *Hanna*, 2009 Ark. App. 809, 372 S.W.3d 375, supports reversal, because his disability causes his inability to pay. In *Hanna*, the appellant was receiving $672 a month in disability, and his restitution obligation was $400 a month. Here, Young was receiving at one point over $3000 a month, and his restitution was set at $275. Disability alone is not an excuse for nonpayment. One can be disabled and still have income. In *Young v. State*, 2019 Ark. App. 580, at 7, 591 S.W.3d 385, 389 (unrelated), the appellant was receiving only $869 a month in disability benefits. We wrote,

> In response to the State's proof of nonpayment, appellant testified that she was on disability and received $845 per month in 2018, which increased to $869 in 2019. Appellant's testimony of her expenses included the $175 restitution payment. Her expenses did not exceed her disability income, although it was close, and notably included cable television, which is a nonessential item.

Young testified that he paid $500 in rent to his stepfather but was looking for another place to live so that his kids could move in with him (one was twenty years old, the other a junior in high school). But beyond that, at the last sentencing hearing, Young asked for yet another change, asserting that he, in fact, *could* and *would* pay this time. The court simply did not believe him. The State can carry its burden to prove willful nonpayment by undermining the probationer's credibility, which is a matter for the circuit court to judge. *Hanna*, 2009 Ark. App. 809, at 6, 372 S.W.3d at 379.

When considering the lower burden of proof in revocation proceedings and giving the proper deference to the superior position of the circuit court to determine questions of credibility and the weight of the evidence, *see Bohannon*, *supra*, we cannot say that the circuit court's decision to revoke Young's probation was clearly against the preponderance of the evidence.

Young also argued for the first time on appeal that it was improper for the trial court to order him to pay $1,000 a month for three months between finding that the revocations were supported by the evidence and then sentencing. This issue was raised for the first time on appeal and is therefore precluded from our review. *See, e.g.*, *Cantrell v. State*, 2009 Ark. 456, at 11, 343 S.W.3d 591, 597.

Affirmed.

VIRDEN and WHITEAKER, JJ., agree.

*Dusti Standridge*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.